(Decided 19th June, 1883.)

SARAH E. ERDMAN, by her next friend CHARLES F. ERDMAN *vs.* ABRAHAM ROSENTHAL and NATHAN ROSENTHAL, trading as A. ROSENTHAL & SON, and others.

*Husband and wife—Injunction—Execution.*

On a bill filed by a married woman for an injunction to restrain an execution issued against her husband, and levied upon personal property which she claimed to be hers, it was HELD:

1st. That the husband, being in apparent possession and active control of the property, dealing with it as his own, it was incumbent upon the wife, in order to defeat the rights of the creditors of the husband, to establish by clear and undoubted proof, a *bona fide* right and title to the property.

2nd. That the simple assertion of title as against the husband or his creditors would not do; there must be clear affirmative proof to show how the property was acquired, and, if purchased, that it was paid for by the money, or purchased upon the credit of the wife exclusively.

3rd. That her claim to the property on the ground that it was paid for out of the profits of a business conducted upon a place leased by her, could not be maintained, unless the business was in fact conducted at her expense, and for her benefit.

4th. That conceding that the husband was acting as the agent of the wife, and that the note upon which the judgment was founded, and the execution was issued, was given for cows purchased for her use, and taken to her farm, such cows became her property, and it was but equitable and just that she should pay for them, and the execution ought not to be enjoined at her instance.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, ALVEY, IRVING, and RITCHIE, J.

*R. E. Jordan,* and *H. P. Jordan,* for the appellant.

*John Grason,* for the appellees.

ALVEY, J., delivered the opinion of the Court.

This is a case in which a wife files a bill to obtain an injunction to restrain the creditors of the husband from taking in execution certain personal property, as that of the husband, upon the allegation that the property belongs to the wife, and not to the husband. Whether the property levied on belongs to the wife, as against the creditors of the husband, and is not liable to be taken to satisfy the judgment against the latter, under the circumstances of the case, is the only question to be determined.

In September, 1881, the appellees, Rosenthal and Son, recovered judgment against John Erdman, Jr., the husband of the appellant, Sarah E. Erdman, on a promissory note given for the price of certain cows purchased by Erdman of such appellees. In January, 1882, a *fi. fa.* was issued on the judgment, and under that execution the sheriff levied on one horse, a pair of mules, a double set of harness, and six cows, as the property of the judgment debtor, to satisfy the judgment. The bill was soon thereafter filed and an injunction obtained to restrain further execution.

The appellees, the judgment creditors, filed their answer under oath, denying that the property levied on belongs to the wife, and aver and insist that it belongs to the husband, and is therefore liable for his debts. Proof was taken, and, on motion, the injunction was dissolved.

It is from the order dissolving the injunction that this appeal is taken.

It appears that in 1874, Sarah E. Erdman, the appellant, obtained from the Trustees of the Orphans' Home, in the City of Baltimore, and others, a lease of a certain piece of ground in Baltimore County, containing about twenty-four acres, unimproved, for the term of ten years, commencing on the 1st day of March, 1875, at a rent of $200 per annum. By the terms of this lease, the lessee obligated herself to erect on the premises, within the first year of the term, a dwelling-house and a barn, at a cost of not less than $1000, and to put up and maintain suitable fencing. The dwelling-house and barn, and some other improvements, were erected, and cost over $1000. The premises were first used as a truck garden, and, for the last four or five years, as a truck and dairy farm. Before obtaining the lease, the wife owned a house and lot in the village of Homestead, and she sold that for $1000, and expended that amount in the erection of the house and barn on the leased premises. No other independent means whatever are shown to have belonged to the wife. The work and labor, in carrying on the truck and dairy business, appears to have been done exclusively by John Erdman and his family, including, of course, his wife. The entire business was carried on and managed in the name of John Erdman. Ostensibly he was the owner of everything on the place, except the place itself, and one heifer or cow, spoken of by some of the witnesses as belonging to the wife. All purchases, sales, and exchanges of stock, and other property, for the uses of the farm, and made in the course of the business, were conducted by him and in his name as owner, until about the latter part of January, 1882 ; and when he had not the money to pay on such purchases, he gave his own individual notes, and afterwards paid them, without at any time, until after the judgment recovered by the appellees,

Erdman *vs.* Rosenthal, *et al.*

ever intimating that he was only an agent for his wife, and that he was acting for her. The note upon which judgment was rendered in favor of the appellees was given for cows purchased for, and which were taken to, the dairy farm. And that transaction was strictly in accordance with his manner of conducting the business. The cows upon which the levy was made were purchased after the recovery of the judgment by the appellees, and the husband gave his own individual note for the price; and the other property mentioned in the schedule was purchased, or exchanged for, by the husband in his own name. The entire business was conducted by the husband, and he held himself out, and was allowed so to hold himself out, as owner and proprietor of all the stock used on the dairy farm, and as pertaining to the business conducted thereon; and the public dealt with him accordingly.

The husband was not examined as a witness, but the wife was; and she swore that she was owner of everything on the farm, and all the proceeds made therefrom. She admits, however, that the husband conducted the business in his own way, and in his own name, with her consent: That he purchased and sold the stock, gave his notes in payment, paid bills and made collections, and acted generally, as if he were owner. But all this was done, she says, as her agent and for her benefit, and not in fact for himself. Several persons with whom he was in the habit of dealing, selling and purchasing of stock from and for the farm, including the judgment creditors in this case, were examined as witnesses; and they all testify that they dealt with him in his own character, and not as agent for his wife; and that it was not until after the recovery of the judgment by the appellees, that the wife was declared to be owner of all the property on the premises, and principal in all the dealings and transactions in reference to the business that was carried on.

On such proof as this, the Court may well entertain a suspicion of the pretension set up by the wife. The husband being in apparent possession and active control of the property, dealing with it as his own, it is incumbent upon the wife, in order to defeat the rights of the creditors of the husband, to establish by clear and undoubted proof, a *bona fide* right and title to the property. The simple assertion of title as against the husband or his creditors will not do; there must be clear affirmative proof to show how the property was acquired, and if purchased, that it was paid for by the money, or purchased upon the credit, of the wife exclusively. *Seitz vs. Mitchell,* 94 *U. S.,* 580, 583; *Hinkle, Ex'r, et al. vs. Wilson,* 53 *Md.,* 292. Here the proof falls very far short of establishing the *bona fide* right of the wife as against the creditors of the husband. Indeed there is no proof of any independent means of her own, except what was expended in putting up the improvements on the leased premises. It would seem, however, that the appellant makes claim to all the profits made of the business conducted on the place leased by her, and she relies on that resource to show that she had means to pay for all the stock, and other personal property, found on the place. But unless the business was in fact conducted at her expense and for her benefit, she could make no such claim to the profits of the business, if there were any, to the exclusion of the husband, simply by reason of the fact that she was lessee of the land. There is, however, no sufficient evidence of any such arrangement for conducting the business, or of profits made therefrom. Besides, it is difficult to perceive upon what equity she can claim to defeat the execution on the judgment of the appellees. If it be true, as the appellant claims, that the husband was acting as her agent, the note upon which the judgment was founded was given for cows purchased for her use and were taken to her farm. Those very cows became her property, and

it is but equitable and just that she should pay for them. In no aspect of the case, therefore, ought the execution to be enjoined at the instance of the wife. The order appealed from must, therefore, be affirmed, and bill dismissed—with costs.

*Order affirmed.*

(Decided 19th June, 1883.)